**VIA ECF**

Uddin, et al. v. Elsevier, B.V., et al., No. 1:24-cv-06409-HG

Dear Judge Gonzalez:

Pursuant to Your Honor's Individual Rule IV.A, we write on behalf of Defendants in the above-captioned matter to outline the bases for Defendants' anticipated joint motion to dismiss the Amended Complaint ("AC").

This putative class action asserts one claim under Section 1 of the Sherman Act against six publishers of peer-reviewed scholarly journals (the "Publishers") and the International Association of Scientific, Technical, and Medical Publishers ("STM"), a trade association of more than 150 members, including the Publishers. Plaintiffs' claim centers on guidelines STM published in 2013 for the "maintenance of ethical standards in publication" (the "Principles"). Plaintiffs allege a "Scheme" by which the Publishers agreed through the Principles ***not to***: (1) pay monetary compensation to peer reviewers; (2) accept articles that have been concurrently submitted to other journals; and (3) allow authors to freely share research described in submitted manuscripts. AC ¶ 39. Plaintiffs use cherry-picked statements from the Publishers' websites to allege that each Publisher has policies evidencing this agreement. AC ¶¶ 54, 96, 102. However, neither the Principles nor the statements evidence the alleged agreement, and Plaintiffs do not (and cannot) allege that any Publisher's conduct started only after the Principles were published. Rather, the challenged practices have been commonplace in scholarly publishing for decades, long before the Principles were "ratified and approved" in 2013 (AC ¶ 45), and are consistent with long-standing, rational, independent conduct. For these reasons, the AC should be dismissed in its entirety.

A Section 1 plaintiff must allege direct evidence of an "actual agreement" or circumstantial evidence from which the existence of an agreement may be inferred. *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Direct evidence is a "smoking gun" that requires no inferences. *Id.* In its absence, a plaintiff must allege parallel conduct and "plus factors" supporting the inference that the alleged conduct "flowed from a preceding agreement rather than from [defendants'] own business priorities." *Id.* at 136-38. Plaintiffs fail to plausibly plead an agreement under either approach.

Through selective quotation, Plaintiffs suggest that the Principles are direct evidence of the alleged agreement. However, the Principles' plain text (which this Court may consider because the Principles are incorporated by reference into and integral to the AC[1]) does not evidence the alleged agreement. ***First***, Plaintiffs attempt to manufacture an agreement not to pay peer reviewers from the Principles' description of peer review as "volunteer work." AC ¶ 52. But Plaintiffs' contention depends on an enormous leap from a few words in an introductory paragraph that simply

---

[1] *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Where such documents contradict the AC's allegations, "the documents control, and the Court need not accept the allegations" as true. *Delta Air Lines, Inc. v. Bombardier, Inc.*, No. 20-CV-3025-GHW, 2021 WL 1163702, at *10 (S.D.N.Y. Mar. 25, 2021) (internal quotations omitted). Contrary to Plaintiffs' misleading assertion (AC ¶ 107), the Principles are publicly accessible at: https://stm-assoc.org/document/stm-ethical-principles-for-scholarly-publication/.

acknowledges "the often unsung volunteer work undertaken by peer reviewers, in maintaining the integrity of the scholarly record." Principle 1. Plaintiffs similarly distort Principle 3.3.1, which acknowledges the role of peer review in the editorial process. It does not say *anything* about paying peer reviewers, let alone constitute an agreement not to do it. *Second*, Principle 3.1.4, which simply acknowledges that concurrent submission is generally viewed as unethical author behavior, does not show any agreement among publishers to prohibit it. *Third*, Plaintiffs mischaracterize Principle 2.2 to assert an agreement to prohibit scholars from "freely sharing their scientific findings." AC ¶ 100. This Principle merely outlines general confidentiality protections for submitted manuscripts. Thus, the Principles are not direct evidence of the alleged agreement.

Plaintiffs also fail to plausibly plead circumstantial evidence of the alleged agreement because they fail to allege (1) parallel conduct by the Publishers; and (2) plus factors supporting an inference that the challenged conduct flowed from a preceding agreement. Instead, Plaintiffs' allegations show that the conduct is "more likely explained by lawful, unchoreographed free-market behavior" by the Publishers than by agreement. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

*First*, Plaintiffs suggest that an agreement not to compensate peer reviewers can be inferred from the fact that the Publishers rely on volunteer peer review. AC ¶ 54. But Plaintiffs fail to allege that the Publishers simultaneously changed their pre-existing unilateral peer review practices to comport with the Principles after they were adopted. Instead, Plaintiffs' own allegations concede that peer review has long been a voluntary independent undertaking. *See* AC ¶ 58. Without well-pleaded facts showing changes from pre-existing unilateral practices, the Court cannot infer that the challenged practices "flowed from a preceding agreement rather than from" each Publisher's "own business priorities." *Citigroup*, 709 F.3d at 138; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[C]onclusory allegation[s] of agreement at some unidentified point do[] not supply facts adequate to show illegality."). There is also no factual allegation that any Publisher has a policy or practice of denying publication to authors who do not volunteer for peer review. Plaintiffs' speculative allegations that rational actors "would" have paid peer reviewers to resolve a purported peer reviewer shortage (AC ¶ 70) does not change the result because an agreement cannot be inferred from the mere "continuation of preexisting [business] patterns." *See RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 231-32 (E.D.N.Y. 2009).

*Second*, Plaintiffs fail to allege that the Publishers all enacted similar concurrent-submission policies or practices at similar times after the adoption of the Principles. Plaintiffs do not allege when *any* Publisher adopted such a policy or practice, or that any Publisher has *ever* accepted articles concurrently submitted to other journals. Instead, Plaintiffs' own allegations show that independent self-interest is an obvious alternative explanation for such policies or practices. Journals receive millions of article submissions a year, and each one takes significant time and effort to review. AC ¶¶ 62-64. It is clearly in the independent economic self-interest of a journal to avoid expending editorial resources on an article that may be published elsewhere. That rationale is all the more compelling with the rise of "paper mills"—entities that submit fraudulent articles, often to multiple journals, designed to resemble genuine research. *See* AC ¶ 99(c)-(d) (acknowledging paper mill detection efforts). The alleged use of a "Duplicate Submission Checker Tool" does not make such conduct less legitimate. AC ¶¶ 97-99. As alleged, the tool is used to detect duplicate submissions based on non-sensitive information, consistent with each Publisher's independent interest in not wasting editorial resources on manuscripts submitted concurrently to other journals. *See Kasada, Inc. v. Access Cap., Inc.*, No. 01-CV-8893(GBD), 2004 WL 2903776,

at *6 (S.D.N.Y. Dec. 14, 2004) (dismissing claim that defendants shared credit information in part because the exchange was consistent with the rational self-interest of managing credit risk).

*Third*, Plaintiffs fail to allege circumstantial evidence from which to infer an agreement to prohibit authors from sharing research described in submitted manuscripts without Publisher permission. Plaintiffs' own allegations show that the Publishers' policies regarding the sharing of research in submitted manuscripts differ in significant ways, demonstrating a lack of parallel conduct. AC ¶ 102. Moreover, Plaintiffs fail to allege when any Publisher adopted its policy, that they adopted such policies at similar times, or that they adopted the policies as a result of the Principles. Plaintiffs therefore fail to allege any change in behavior evidencing an agreement as opposed to a continuation of pre-existing, unilateral, rational business practices. *See RxUSA Wholesale*, 661 F. Supp. 2d at 231-32. Indeed, the AC implies that such policies have been around since the "mid-20th Century." *See* AC ¶¶ 29-32, 80-83. Finally, it makes "perfect business sense" for a publisher of a subscription journal to adopt policies limiting outside use of the article, just like any publisher would seek to protect its articles from copying. *See Citigroup*, 709 F.3d at 138.

*Fourth*, Plaintiffs' conclusory allegations of collusion through unspecified STM meetings (AC ¶¶ 43-48) merely show that the Publishers (among many others) participate in STM, which is fully consistent with "lawful, unchoreographed free-market behavior." *Iqbal*, 556 U.S. at 680; *N. Am. Soccer League v. U.S. Soccer Fed'n*, 883 F.3d 32, 41 ("*NASL*") (2d Cir. 2018) ("A trade association is not by its nature a 'walking conspiracy.'"). They do not support an inference of "a conscious commitment to a common scheme designed to achieve an unlawful objective." *NASL*, 883 F.3d at 39 (internal quotations omitted).

Even if Plaintiffs alleged an agreement (they have not), their claim must be dismissed because they fail to allege facts showing that the purported agreement is an unreasonable restraint of trade under any standard. *See Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 618 (S.D.N.Y. 2013). Plaintiffs allege no basis for *per se* or quick look review, which apply only to a small universe of "manifestly anticompetitive" restraints that "always or almost always tend to restrict competition and decrease output" and "lack . . . any redeeming virtue." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (citations and alterations omitted). Plaintiffs' own allegations establish that peer reviewers receive different types of compensation from various publishers, that peer review offers reputational benefits, and that it is seen by reviewers as a way to give back to the research community. AC ¶ 54. Plaintiffs acknowledge that the Publishers' treatment of concurrent submissions combats fraudulent paper mill submissions, and their allegations suggest that the challenged practices preserve limited resources, including peer reviewers' time. *See* AC ¶¶ 65, 99. And practices regarding the confidentiality of unpublished manuscripts are facially procompetitive as they aim to preserve the value of original work. Finally, Plaintiffs do not allege a viable claim under the rule of reason because they fail to allege harm to competition in a properly defined relevant market. *See Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018). Plaintiffs fail to allege any competitive harm caused by the Publishers' alleged conduct. Moreover, the AC fails to allege any facts to support the implausibly broad "markets" that assume that all journals compete for the same articles and peer reviewers regardless of discipline or sub-discipline. AC ¶¶ 110, 117. Indeed, Plaintiffs acknowledge a "massive array of specialized subject areas" on which a journal might focus. AC ¶ 32. Dismissal of the AC is therefore warranted.

Respectfully submitted:

| CRAVATH, SWAINE & MOORE LLP | VENABLE LLP |
|---|---|
| */s/ David R. Marriot* | */s/ Danielle R. Foley* |
| David R. Marriott | Danielle R. Foley |
| Sharonmoyee Goswami | Lisa Jose Fales |
| Jesse M. Weiss | Andrew T. Hernacki |
| Two Manhattan West | 600 Massachusetts Avenue, NW |
| 375 Ninth Avenue | Washington D.C. 20001 |
| New York, NY 10001 | Telephone: (202) 344-4000 |
| (212) 474-1000 | drfoley@venable.com |
| dmarriott@cravath.com | ljfales@venable.com |
| sgoswami@cravath.com | athernacki@venable.com |
| jweiss@cravath.com | |
| | *Attorneys for Defendant* |
| *Attorneys for Defendant* | *Sage Publications, Inc.* |
| *Elsevier B.V.* | |

| ARNOLD & PORTER KAYE SCHOLER LLP | WEIL, GOTSHAL & MANGES LLP |
|---|---|
| */s/ C. Scott Lent* | */s/ Adam C. Hemlock* |
| C. Scott Lent | Adam C. Hemlock |
| Esther Ha Yoon Sohn | Benjamin E. Marks |
| Leah J. Harrell (admitted *pro hac vice*) | Rebecca R. Jacobson |
| 250 West 55th Street | 767 Fifth Avenue |
| New York, NY 10019-9710 | New York, NY 10153 |
| Telephone: (212) 836-8000 | Telephone: (212) 310-8000 |
| Fax: (212) 836-8689 | Fax: (212) 310-8007 |
| scott.lent@arnoldporter.com | adam.hemlock@weil.com |
| esther.sohn@arnoldporter.com | benjamin.marks@weil.com |
| leah.harrell@arnoldporter.com | rebecca.jacobson@weil.com |
| | |
| Matthew Tabas (admitted *pro hac vice*) | *Attorneys for Defendant International* |
| 601 Massachusetts Avenue, NW | *Association of Scientific, Technical, and* |
| Washington, DC 20001-3743 | *Medical Publishers* |
| Telephone: (202) 942-5000 | |
| Fax: (202) 942-5999 | |
| matthew.tabas@arnoldporter.com | |

*Attorneys for Defendant*
*John Wiley & Sons, Inc.*

| | |
|---|---|
| CLEARY GOTTLIEB STEEN & HAMILTON LLP | WHITE & CASE LLP |
| */s/ C. Lawrence Malm* | */s/ Robert A. Milne* |
| D. Bruce Hoffman<br>Kenneth Reinker<br>C. Lawrence Malm<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037-3229<br>T: 202-974-1500<br>F: 202-974-1999<br>bhoffman@cgsh.com<br>kreinker@cgsh.com<br>lmalm@cgsh.com | Robert A. Milne<br>Jack E. Pace III<br>Bryan Gant<br>Daniel Grossbaum<br>1221 Avenue of the Americas<br>New York, NY 10020<br>tel.: (212) 819-8200<br>fax: (212) 354-8113<br>rmilne@whitecase.com<br>jpace@whitecase.com<br>bgant@whitecase.com<br>dan.grossbaum@whitecase.com |
| *Attorneys for Defendant*<br>*Springer Nature AG & Co. KgaA* | *Attorneys for Defendants Taylor & Francis Group, Ltd.; Taylor & Francis Group, LLC; and Informa plc* |

SIDLEY AUSTIN LLP

*/s/ Benjamin R. Nagin*
Benjamin R. Nagin
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
bnagin@sidley.com

Carrie Mahan
S. Nicole Booth
1501 K Street, N.W.
Washington, D.C. 20005
carrie.mahan@sidley.com
nicole.booth@sidley.com
(202) 736-8000

*Attorneys for Defendants Wolters Kluwer N.V.;*
*and Wolters Kluwer Health, Inc.*

The Honorable Hector Gonzalez
    United States District Court, Eastern District of New York
        225 Cadman Plaza East, Courtroom 6A South
            Brooklyn, NY 11201

Copies To: All Counsel of Record (via ECF)