<u>**VIA ECF**</u>

RE:  *Dhamala et al. v. Elsevier B.V. et al.*, No. 1:24-cv-06409-HG (E.D.N.Y.)

Dear Judge Gonzalez:

Plaintiffs hereby respond to Defendants' joint pre-motion letter regarding their proposed motion to dismiss. ECF No. 106. Defendants' arguments are meritless, and rely upon inapposite authority and mischaracterizations of Plaintiffs' Amended Complaint ("Complaint," ECF No. 63).

Plaintiffs adequately allege concerted action because Plaintiffs allege direct evidence of agreement. *Mayor of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135-36 (2d Cir. 2013) ("'Allegations of direct evidence of an agreement . . . are independently adequate' under *Twombly*" (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323-24 (3d Cir. 2010))). Defendants are the International Association of Scientific, Technical, and Medical Publishers ("STM") and members of STM (the "Publisher Defendants"). STM *requires* its members, as a *precondition of membership*, to click a box next to "*Confirmed and agreed*" regarding the following statement: "Please confirm that you have read the STM Ethical Principles for Scholarly Publishing (note that all STM members *must adhere* to these guidelines), and are *agreeing* that your organization *abides by these principles* or equivalent principles[.]" Compl. ¶ 41 (screenshot from STM's website; emphases added). There is no question that the Publisher Defendants agreed to adhere to the Principles. *Id.*

Defendants' conspiracy is expressly set forth in a set of mandatory rules to which all Defendants have agreed. Specifically, and as alleged in the Complaint, STM Principle 1 states peer review is "volunteer work" and Principle 3.3.1 provides that it is "generally agreed that scholars who wish to have their own work published in journals have an obligation to do a fair share of reviewing for these journals." Compl. ¶ 52. STM Principle 3.1.4 provides that "[s]ubmitting the same manuscript to more than one journal concurrently [] constitutes unethical behavior and is unacceptable." *Id.* ¶ 91. Lastly, Principle 2.2 provides that submitted manuscripts "must not be shown to or discussed with others except as authorized by the editor." *Id.* ¶ 100.

These allegations alone would be sufficient to plead agreement with respect to the over 150 members of STM, as the Second Circuit recently reaffirmed. *Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299 (2d Cir. 2023) (the adoption of a policy by FIFA, combined with the member leagues' prior agreement to adhere to FIFA's policies, constituted direct evidence of an agreement among FIFA's members). Here, Plaintiffs name only the small set of publishers who created the Principles and control STM: the Publisher Defendants.

Plaintiffs further allege in detail how the Publisher Defendants transformed a previously non-profit system into a cartel that sacrifices the public interest to maximize profits. Compl. ¶¶ 27-32. The Publisher Defendants consolidated the market and created STM and the Principles to facilitate their collusion and defend their economic interests. *Id.* ¶¶ 33-36, 38-49. Plaintiffs document how Defendants' misconduct has diverted billions of dollars that would have

1

otherwise gone to fund scientific research, and created and exploited perverse market failures, delaying and hindering scientific progress.  *Id.* ¶¶ 55-90.

Defendants next argue that, even if Plaintiffs sufficiently plead agreement (which they do), the Principles do not restrain trade.  Defendants are mistaken.  The Principles restrain trade in three ways, each of which violates Section 1 of the Sherman Act through any mode of antitrust analysis (per se, quick look, or rule of reason).

First, Defendants agreed not to pay Class Members for their labor.  Compl. ¶¶ 52-61.  Defendants concede they acted consistent with the alleged agreement and have paid Class Members nothing.  *See Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 110 (2021) (Kavanaugh, J., concurring) ("[P]rice-fixing labor is ordinarily a textbook antitrust problem because it extinguishes the free market in which individuals can otherwise obtain fair compensation for their work.").  Defendants try to brush aside Principle 3.3.1 with more misstatement, asserting that the Principle only "acknowledges the role of peer review in the editorial process."  ECF No. 106 at 2.  Not so.  It is through Principle 3.3.1 that Defendants agreed to take advantage of their market power and leverage over Class Members to coerce Class Members into providing peer review work on a "voluntary" basis, that is, with no compensation.  Scholars have no choice but to provide their valuable labor for free in order to survive in the "publish or perish" world of academia.  *See* Compl. ¶ 2.

Second, Defendants agreed not to compete with each other by prohibiting Class Members from submitting their manuscripts to more than one journal at a time.  Compl. ¶¶ 91-99 (STM Principle 3.1.4).  This is a naked agreement not to compete, and restraints of this kind have long been textbook antitrust violations.  *See*, *e.g.*, *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978).  Just as STM's "Principles" prohibit members from competing for manuscripts, the National Society of Professional Engineers' "canons of ethics" prohibited its members from submitting competitive bids.  *Id.* at 684.  And just as Defendants argue that competition does not suit them because competing for manuscripts would require "expending editorial resources on an article that may be published elsewhere," ECF No. 106 at 2, the Society argued that "competition among professional engineers was contrary to the public interest[,]" because "competitive pressure to offer engineering services at the lowest possible price would adversely affect the quality of engineering."  *Prof'l Eng'rs*, 435 U.S. at 684-85.  The Supreme Court condemned the restraint, explaining that the Sherman Act does not allow a "defense based on the assumption that competition itself is unreasonable."  *Id.* at 696.  The Society's "attempt to do so on the basis of the potential threat that competition poses to the public safety and the ethics of its profession is nothing less than a frontal assault on the basic policy of the Sherman Act."  *Id.* at 695.  Defendants' argument to the contrary is without merit.  In any case, such procompetitive justifications are affirmative defenses that Plaintiffs are not required to rebut as part of their prima facie claim.  They are thus "inappropriate" on a motion to dismiss.  *Davitashvili v. Grubhub Inc.*, No. 20-cv-3000 (LAK), 2022 WL 958051, at *6 (S.D.N.Y. Mar. 30, 2022).  *See also Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023) ("[T]he classification of a restraint as ancillary is a defense, and complaints need not anticipate and plead around defenses."), *cert. denied*, 144 S. Ct. 1057 (2024).

Third, Defendants agreed, through STM Principle 2.2, to prohibit Class Members from showing or discussing the content of their own manuscript with anyone other than the single

journal permitted to review the research at a time.  Compl. ¶¶ 100-104.  This is yet another naked restraint on competition and is unlawful for the same reasons that Principle 3.1.4 is unlawful.

      Defendants also argue that the collusion Plaintiffs challenge is implausible because Defendants exploited Class Members in the same ways that the STM Principles require, long before the creation of the Principles.  This argument, too, is without merit.  Plaintiffs do not rely upon an inference of collusion from parallel conduct.  The case law Defendants rely upon is inapposite, because all of those cases involve allegations limited to parallel conduct and plus factors, with no direct evidence of agreement.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (parallel conduct and plus factors only); *Mayor of Baltimore*, 709 F.3d 129 (plaintiffs pled only parallel conduct).  Regardless, an antitrust conspiracy does not become lawful because Defendants admit that the misconduct at issue began earlier than direct evidence confirming the conspiracy's existence.  *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 228 (1940) (an anticompetitive buying program permitted under the National Industrial Recovery Act nevertheless violated antitrust law when the buying program continued after that federal law was struck down).  The Society of Engineers made the same erroneous argument to the Supreme Court decades ago: "The ethical principles observed by engineers developed over many years, long antedating NSPE's formation[.]"  Pet'rs Br., *Nat'l Soc'y of Prof'l Eng'rs v. United States*, No. 76-1767, 1977 WL 205310, *22 (Nov. 17, 1977).  *See also Alston*, 594 U.S. 69 (unanimously condemning NCAA's long-running practice of restricting student athlete compensation and benefits).

      Finally, Defendants argue that Plaintiffs do not satisfy the rule of reason inquiry, because Plaintiffs do not allege harm to competition and allege implausible market definitions.  Again, Defendants are mistaken.  Agreeing to force Class Members to work for nothing is a "textbook" antitrust violation and competitive harm, *Alston*, 594 U.S. at 110, as is agreeing not to compete for Class Member manuscripts, *Prof'l Eng'rs*, 435 U.S. 679; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) ("If the plaintiff in this case could allege that defendants actually formed an agreement to fix MPT salaries, this *per se* rule would likely apply.").  Market definition is unnecessary because Plaintiffs allege per se violations of the Sherman Act; it is only relevant when and if the Court applies the rule of reason.  *See F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 462 (1986).  Even if the Court applies the rule of reason, market definition is ordinarily "a deeply fact-intensive inquiry," and courts "hesitate to grant motions to dismiss for failure to plead a relevant . . . market."  *Todd*, 275 F.3d at 199-200.  Even if the Court decides to evaluate the relevant markets at this early stage, the alleged markets are not impermissibly broad.  *See id.*; *see also Compass, Inc. v. Real Est. Bd. of N.Y., Inc.*, No. 21-cv-2195 (AJN), 2022 WL 992628, at *6 (S.D.N.Y. Mar. 31, 2022).  Further, Defendants possess high market shares and market power in any conceivable alternative market definition.  Compl. ¶¶ 33-36, 110-22.

      Plaintiffs have adequately alleged that Defendants' express agreements in restraint of trade violate Section 1 of the Sherman Act.  Under controlling law, these allegations are clearly sufficient to state a claim for relief.

Dated: March 4, 2025                    Respectfully submitted,

By: */s/ Dean M. Harvey*

Dean M. Harvey (*pro hac vice*)
Jallé H. Dafa (*pro hac vice*)
Benjamin A. Trouvais (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000
Fax: (415) 956-1008
dharvey@lchb.com
jdafa@lchb.com
btrouvais@lchb.com

Emily N. Harwell (NY Bar # 5985585)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Phone: (212) 355-9500
Fax: (212) 355-9592
eharwell@lchb.com

Benjamin Elga (NY Bar # 5332861)
Janet Herold (*pro hac vice*)
JUSTICE CATALYST LAW
40 Rector St
New York, NY 10006
Phone: (518) 732-6703
belga@justicecatalyst.org
jherold@justicecatalyst.org

Roberta D. Liebenberg (*pro hac vice*)
Gerard A. Dever (*pro hac vice*)
Jeffrey B. Gittleman (*pro hac vice*)
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Phone: (215) 567-6565
Fax: (215) 568-5872
rliebenberg@finekaplan.com
gdever@finekaplan.com
jgittleman@finekaplan.com

Eric L. Cramer (*pro hac vice*)
Michael J. Kane (*pro hac vice*)
Joseph E. Samuel, Jr. (*pro hac vice*)
Patrick F. Madden (*pro hac vice*)
BERGER MONTAGUE
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Phone: (215) 875-3009
ecramer@bm.net
mkane@bm.net
jsamuel@bm.net
pmadden@bm.net

Scott A. Martin (NY Bar # 2387843)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Phone: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com

Steven F. Molo (NY Bar # 4221743)
Jennifer Schubert (NY Bar # 4921201)
Pratik Kumar Raj Ghosh (NY Bar # 5754940)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Phone: (212) 607-8160
Fax: (212) 607-8161
smolo@mololamken.com
jschubert@mololamken.com
prajghosh@mololamken.com

Eric Posner (*pro hac vice*)
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 450-6700
Fax: (312) 450-6701
eposner@mololamken.com

*Counsel for Plaintiffs and the Proposed Class*